Johnny Griffin appeals from a judgment of the common pleas court which denied his latest motion to vacate his 1991 sentences for felonious assault and kidnapping for his involvement in the shooting death of Preston Foster. On appeal he claims ineffective assistance of counsel and failure of the trial court to follow an earlier mandate of this court on re-sentencing. After examining the record on this appeal, we have determined that the doctrine of res judicata precludes our review and therefore we affirm the judgment of the trial court.
The history of the case reveals that on the morning of January 31, 1990, the victim, Preston Foster, and his friend, Harlan Page, went to the License Bureau in Cleveland where Foster obtained a state identification card. Thereafter, the pair went to the home of Foster's girlfriend in the Garden Valley Estates.
Around 3:30 that afternoon, Page heard a knock at the door of the apartment. As Foster answered the door, Page saw several men standing outside, one of whom grabbed Foster around the neck, held a large black revolver to his head, and ordered him to go with them. Page identified one of them as Roth Cage.
Cage had been with Griffin and Griffin's cousin, Rodney Allen, earlier that day. Griffin informed Cage that he was looking for Foster. Griffin drove to Foster's girlfriend's apartment, and, when Foster answered the door, Cage saw Griffin pull out a gun, grab Foster and order him into the vehicle. Foster entered the rear seat of the vehicle with Griffin and Allen on either side of him. Cage took over the driving and proceeded to East 93rd Street and Gibson Avenue to an apartment Allen shared with Griffin's brother, Isaih Box. While en route, Cage heard Griffin telling Foster to "give me the stuff." He observed Griffin strike Foster in the head with the gun and Foster giving his jewelry to Griffin.
Upon arriving at Allen's apartment building, Allen unlocked the security gate at the entrance and the men proceeded to the apartment. As they were making their way up the stairs, Cage again observed Griffin strike Foster in the head with the gun.
Once inside the apartment, one of the men ordered Foster into a closet where he remained for approximately fifteen minutes. Soon after Isaih Box arrived at the apartment with a friend and Box proceeded to beat Foster using his fists, and at one point striking Foster with a three foot tall metal ashtray. After a few minutes, Cage and Allen restrained Box, and someone again ordered Foster into the closet.
Box then received a phone call and asked Allen and Cage to pick up his female cousin. When they returned, Cage observed Box's friend inside wiping something off the floor. When Box's friend came to the door to let them in, he had a rag in his hand that appeared to have blood on it. Additionally, Cage noticed what appeared to be blood on Griffin's socks. Cage did not see Foster in the apartment.
Approximately one week later Cage went back to the same apartment to visit Box. At one point during his visit, Cage entered the closet where Foster had been confined and observed what appeared to be a smeared fingerprint of blood on the wall. The next time he visited the apartment, Cage noticed that the closet had been partially repainted.
Sometime in the middle of February, 1990, Foster's mother came to learn that her son had been kidnapped. Mrs. Foster called the police and filed a missing person's report and began her own investigation of her son's disappearance. Approximately two weeks later, Mrs. Foster, accompained by Harlan Page, went to the Cleveland Police Department's homicide unit. Mrs. Foster then filed another missing person's report at the Fourth District Headquarters.
On the morning of March 8, 1990, two workers from the Cleveland Electric Illuminating Company, who were conducting an annual inspection of electric lines located in a manhole at 3665 East 78th street, discovered a blanket covering the lower portion of the manhole, which had partially filled with water. When they removed the blanket they saw what appeared to be a glove floating on the surface of the water. Thereafter, they discovered a hand attached to a submerged human body and thereupon notified the Cleveland Police Department of the discovery.
Mrs. Foster later identified the body as the remains of her son, Preston Foster and the coroner determined the cause of death to be a gunshot wound to the head.
The grand jury subsequently indicted Griffin, along with Box and Allen, on the following charges: (1) count one, aggravated murder, with three specifications, to wit: firearm, felony murder, and aggravated felony for a prior conviction for involuntary manslaughter; (2) count two, aggravated murder, with the same three specifications; (3) and count three, kidnapping, with a firearm specification and aggravated felony specification.
On December 13, 1990, the court began a hearing on several of Griffin's pretrial motions and overruled his motion to dismiss on speedy trial grounds. Thereupon the trial judge impaneled a jury.
Following testimony of the state's witnesses, the court granted Griffin's Rule 29 and reduced the charge on count one to violation of felonious assault. Thereafter, trial proceeded on reduced counts one and three of the indictment.
Griffin presented testimony of three witnesses on his behalf, including that of his brother, Isaih Box. In rebuttal the state presented the testimony of two witnesses.
The jury found Griffin guilty of felonious assault and kidnapping, both with firearm specifications. The court then sentenced Griffin on count one, to a term of incarceration of three years for the gun specification prior to and consecutive with eleven to fifteen years; and on count three, to a term of incarceration of three years for the gun specification to be served prior to and consecutive with a term of thirteen to twenty-five years.
Griffin appealed. In State of Ohio v. Johnnie Griffin (Dec. 3, 1992), Cuyahoga App. No. 61436, unreported, our court affirmed the convictions but remanded for re-sentencing with instructions to impose only one three year gun penalty, which the record shows the trial court accomplished on January 4, 1993.
Next, Griffin filed a motion for relief from judgment on July 12, 1994 and another new motion to set aside the judgment of conviction on September 13, 1995. The court denied both motions and issued Findings of Fact and Conclusions of Law on November 14, 1995. On appeal, our court affirmed the trial court's denial of Griffin's motion for relief from judgment.
Griffin then filed a second Petition for post-conviction relief and the court dismissed it on September 25, 1996, without issuing Findings of Fact and Conclusions of Law. This court affirmed that decision.
Griffin subsequently filed his third post-conviction petition on February 6, 1997 alleging the same grounds as his previous petitions. The court summarily overruled that petition, without issuing Findings of Fact and Conclusions of Law. On appeal, our court affirmed the court's denial of these motions.
On June 4, 1998 Griffin filed his fourth petition to vacate and set aside sentence. By way of a journal entry dated July 8, 1998, the court again summarily overruled that petition, but issued no Findings of Fact or Conclusions of Law.
Griffin now appeals from that determination and presents four assignments of error for our review.
Because the first three assignments of error consider effective assistance of counsel, we shall consider them jointly. They state:
I.
 DEFENDANT-APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL BY COUNSEL'S FAILURE TO SUBPOENA WITNESSES ON BEHALF OF THE DEFENSE WHEN SAID WITNESSES TESTIMONY WOULD HAVE BEEN MATERIALLY BENEFICIAL TO THE DEFENSE AND IMPEACHED THE CREDIBILITY OF THE STATES CHIEF WITNESS AND DEFENSE COUNSEL WAS AWARE OF SAID WITNESSES PRIOR TO TRIAL AND FAILED TO INVESTIGATE OR INTERVIEW SAID WITNESSES.
II.
 DEFENDANT-APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL BY COUNSELS FAILURE TO INVESTIGATE FOR THE EXISTENCE OF A ALLEGED PAROLE HOLDER AS ATTESTED TO BY TRIAL COUNSELS AFFIDAVIT (SEE EXHIBIT "F" "G") WHICH CLEARLY DEMONSTRATE COUNSELS INEFFECTIVENESS IN PROTECTING DEFENDANT-APPELLANT GRIFFIN'S SPEEDY TRIAL RIGHTS.
III.
 COUNSEL WAS INEFFECTIVE FOR FAILING TO PROVIDE CONFLICT FREE REPRESENTATION TO DEFENDANT-APPELLANT AND PREVENT ABUSE OF DISCRETION BY THE TRIAL COURT WHICH CONSTITUTES PLAIN ERROR ADVERSELY AFFECTING THE SUBSTANTIAL RIGHTS OF THE ACCUSED UNDER OHIO CRIM. R. 52(B) WHICH GIVES THIS COURT THE AUTHORITY TO ADDRESS AND CORRECT SUCH ERROR WHICH RESULTED IN A CLEAR MISCARRIAGE OF JUSTICE.
Here, Griffin asserts ineffective assistance of counsel in that counsel failed to subpoena several defense witnesses. In support, he offers the affidavits of Linda McDonald, Althea Jones, Rodney Allen (a.k.a.) Shomari Nigel Fareed, Janice Hurn, and himself, stating that had trial counsel called these witnesses, they would have testified to his innocence. Griffin also alleges that Attorneys Michael Wypasek, Robert Tobik, and Miss Judith Shaffer of the Department of Rehabilitation and Corrections, would have testified that a parole hold did not exist on him prior to trial.
Griffin's second claim for ineffective assistance of counsel concerns counsel's failure to investigate the existence of a parole hold, which violated his right to speedy trial. In this assignment of error, Griffin argues that because the state failed to produce evidence of a parole hold, he should have been entitled to the triple count provision in R.C. 2945.71; since his trial commenced one hundred seventy-three days after arrest, he asserts the state violated his right to a speedy trial.
Griffin's final claim regarding ineffective assistance of counsel contends that counsel failed to provide him conflict free representation. Here, Griffin argues that trial counsel assisted the court and prosecution in foreclosing his right to a speedy trial when counsel agreed that the trial commenced on December 17, 1990; asserting the court abused its discretion when the judge expressed a concern that the jury would be hearing the case during the holidays and that he had tickets to go to Florida.
The state contends that the record reflects that the trial court, the trial prosecutor, and Griffin's defense counsel all agreed that a parole holder existed, making the triple count provision inapplicable. Next, the state asserts that Griffin failed to satisfy the test set forth in Strickland v. Washington
(1984), 466 U.S. 668, and that his claims are barred by the doctrine of res judicata, because the same claims have been raised and rejected in Griffin's previous appeals to our court.
The issues, then, presented for our review concern whether Griffin's claims of ineffective assistance of counsel and speedy trial violations are barred by the doctrine of res judicata.
In this case, the record reflects that Griffin filed a direct appeal and has since filed three previous post-conviction relief motions alleging these same concerns.
In State v. Perry (1967), 10 Ohio St.2d 175, the court stated in its syllabus:
* * *
 Constitutional issues cannot be considered in post-conviction proceedings under R.C. 2953.21 where they have already been or could have been fully litigated by the prisoner while represented by counsel * * *
* * *
 Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised by the defendant at the time of trial, which resulted in the judgment of conviction, or an appeal from that judgment.
 Additionally, the court in State v. Sowell (1991), 73 Ohio App.3d 672
stated:
 A claim of ineffective assistance of counsel presented in a post-conviction petition may be dismissed under the doctrine of res judicata where petitioner, represented by new counsel on direct appeal, has failed to raise on appeal the issue of trial counsel's competence and the issue could fairly have been determined without evidence dehors the record.
In this case, all of these issues have previously been raised and rejected by our court in Griffin's direct appeal and three subsequent appeals. Further, a review of the transcript of the trial proceedings reveals that at trial, Griffin had been represented by Attorneys Robert Tobik and Thomas Keane but that Attorney Michael Wypasek on appeal. Therefore, because new counsel represented Griffin on direct appeal and failed to raise the issue of trial counsel's competence, Griffin's claims of ineffective assistance of counsel are barred by the doctrine ofres judicata.
Therefore, in accordance with Perry and Sowell, Griffin's first three assignments of error are barred by the doctrine of resjudicata.
The fourth assignment of error states:
 THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO CARRY OUT THE MANDATES OF THE EIGHTH DISTRICT COURT OF APPEALS WHEN IT REMANDED THE APPELLANT BACK TO THE TRIAL COURT FOR RE-SENTENCING.
Griffin argues that the trial court abused its discretion when it failed to follow this court's remand instructions for resentencing, stating that the trial court abused its discretion when it failed to address him personally and afford him an opportunity to offer information regarding mitigation of his sentence.
The state maintains that Griffin is not entitled to an evidentiary hearing relative to a post conviction relief petition.
The issue here presented for our review is whether the trial court abused its discretion when it re-sentenced Griffin.
We begin our review of the law by reference to Crim. R. 32(A)(1), which states in pertinent part:
 Before imposing sentence the court shall afford counsel an opportunity to speak on behalf of the defendant and also shall address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment.
In Booker v. Engle (1982), 535 F. Supp. 1300, the court there confronted a similar situation where Booker raised the issue of the trial court's failure to return him for resentencing. There, the court stated:
 * * * the Court has been unable to find any authority supporting petitioner's claim that the trial court's failure to return him for the resentencing ordered by the appellate court, which evidently involved a reduction of the original sentence, constitutes a deprivation of due process.
The court also determined,
 Moreover, the Court finds nothing in the language of Rule 32, Ohio R.Crim.P., or the cases construing same, to suggest that the procedures set forth therein for original sentencing must be followed and repeated for resentencing.
Finally, the court concluded,
 Absent any allegation that petitioner was not afforded an opportunity to address the trial court prior to the imposition of the original sentence or that he was not fully apprised of his legal rights subsequent to the imposition of that sentence, in the manner provided in Rule 32, the Court concludes that petitioner received all the due process to which he was entitled at the time original sentence was imposed.
We agree with these conclusions and find the analysis persuasive in this case.
In this case, Griffin failed to demonstrate that the trial court denied him Crim. R. 32(A) rights during the initial sentencing. Further, when this court remanded Griffin's case for resentencing, we instructed the trial court to remove one of the firearm specifications. A review of the docket demonstrates that on January 4, 1993, the trial court did, in fact, modify Griffin's sentence in accordance with our instructions. Accordingly, this assignment of error is overruled.
In accordance with the foregoing, we conclude that the doctrine of res judicata bars all of the claims of ineffective assistance of counsel and that the trial court did not abuse its discretion when it resentenced Griffin.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES M. PORTER, A.J., and ANN DYKE, J., CONCUR
 _________________________________ JUDGE TERRENCE O'DONNELL